**SPRUCE et al. v. WHITE.**

Civil Action No. 140.

District Court, S. D. West Virginia.

July 17, 1942.

Brown, Jackson & Knight, of Charleston, W. Va., and Douglas, Obear & Campbell, of Washington, D. C., for plaintiffs.

A. N. Breckinridge, of Summersville, W. Va., W. L. Wooddell, of Webster Springs, W. Va., Phyllis Hart, of Summersville, W. Va., and Arthur S. Dayton, of Charleston, W. Va., for defendant.

MOORE, District Judge.

This case involves the interpretation of a timber contract made between the parties on the 20th day of May, 1936. If interpreted in accordance with the plaintiffs' contention, plaintiffs would be entitled to a judgment; but if according to the contention of the defendant, he would be entitled to recover a small balance against the plaintiffs.

The contract provides for the sale by the plaintiffs and the purchase by the defendant of all merchantable standing timber ten inches and more in size on a tract of land of undetermined acreage in Patrick County, Virginia. Timber of less size, as well as fallen merchantable timber, was also covered by the contract, but the provisions relating thereto are immaterial here. The pertinent parts of the agreement relate to terms of payment and rate of cutting. They are as follows:

(1) "That for and in consideration of the sum of Five Thousand Dollars, ($5,000) to be paid by the party of the second part to the party of the first part in cash upon the execution of this agreement, which sum is to be credited on the purchase price of the timber as hereinafter mentioned, and said Five Thousand Dollars ($5,000) is an advance payment on said purchase price, but the said Five Thousand Dollars ($5,000) is to be credited on account of the overage monthly payments herein referred to at any time after six (6) months from the date of this contract as may be designated by the party of the second part. And for the further considerations hereinafter mentioned, the party of the first part agrees to sell to the party of the second part all of the merchantable standing timber," etc.

(2) "The party of the second part agrees to purchase the timber and trees aforementioned upon the terms and at the prices herein set out, and pay the Five Thousand Dollars ($5,000) as aforementioned; the said Five Thousand Dollars ($5,000) is to be credited upon any monthly overage payment over and above the stipulated minimum monthly payment provided for herein. The second party agrees to cut, market, and pay for the same as follows—that is to say: The party of the second part agrees to cut a minimum of 125,000 feet of timber or lumber each month, beginning six months after date hereof and pay the party of the first part Five Hundred Dollars ($500) per month as a minimum payment, beginning at the expiration of the aforesaid six (6) months, and continue to cut a minimum of 125,000 feet per month and to continue to pay Five Hundred Dollars ($500) each month thereafter during the time the party of the second part is cutting the lumber, trees, etc., on said tract of land, subject to unavoidable conditions which may arise and substantially interfere with the operations.

"The party of the second part agrees to pay the minimum monthly payments each month, irrespective of the quantity or kind of timber or logs cut; but if he is unable to market a sufficient amount of timber or logs, etc., etc., to pay the minimum payments as aforesaid for any cause, then he, the second party, may continue the operations without the payment of the minimum monthly payment aforesaid; but the party of the first part may hold and/or sell sufficient lumber to protect him and to secure said unpaid minimum payments.

"It is further understood between the parties hereto that in the event however, that the party of the second part cuts more than 125,000 feet of timber, measured as herein provided for, for any month after the expiration of the first-mentioned six months, he will pay to the party of the first part for such excess at the rate of Four Dollars ($4) per thousand feet, measured as aforesaid, Two Dollars ($2) per thousand feet for fallen trees; that he will pay Fifty Cents (50¢) per 160 cubic feet cord for poplar wood, in addition to the monthly payments of Five Hundred Dollars ($500).

"It is further understood and agreed that any excess so paid by the party of the second part to the party of the first part, may be used to make up the minimum rate in a subsequent month, in the event that he fails to cut—for good cause—the minimum for any future month during the time that this contract is being executed and performed."

The contract further provided that if the purchaser failed to pay for the lumber as cut, in accordance with the contract, the sellers might (1) "stop the sale" of sufficient lumber to secure them, or (2) upon default for more than fifteen days, the sellers might take possession of manufactured lumber, and in either case, might sell the lumber for the unpaid payments. It was also provided that on failure of the purchaser substantially to perform the contract, the sellers might proceed as provided by the laws of the State of Virginia for the removal of a tenant holding over after expiration of his term; and also, that on default by the purchaser in any of the terms of the agreement, sellers, after thirty days, should have the right to cancel the contract and dispossess the purchaser. The purchaser was given the option, after cutting and paying for "at least" $15,000 worth of timber, of cancelling the contract and ceasing operations, if he found it impracticable or unprofitable to continue to cut and remove the timber; but if the contract were not cancelled at that time, the purchaser was required to continue until the entire contract had been performed. The purchaser agreed, subject to the cancellation option (after removing $15,000 worth of the timber) already mentioned, to clear the tract of all merchantable timber, but no time limit was fixed by the contract within which the timber should be removed. The sellers reserved title to the timber until paid for. It was agreed that if purchaser's possession were substantially interfered with so as to prevent him from cutting timber to the value of the cash deposit made on account of the purchase price, the sellers would refund "such part of the cash advanced as not covered by the amount of the timber cut." The ordinary provisions concerning rights of way, saw mill and camp sites, use of water, waste wood, etc., were also included in the contract.

On November 18, 1936, an amendment to the contract was agreed upon by the parties. By the amendment, the time for the purchaser to begin removing the timber was extended to twelve months instead of six months, but the "minimum payments" of $500 per month were still required to commence at the end of the original six months. The amendment also provided for thirty days notice to the purchaser of any effort on the part of the sellers to cancel the contract because of any alleged failure on the part of the purchaser to comply with its terms, and cancelled the provision of the original contract relating to a refund by the sellers to the purchaser in the event the purchaser's possession were substantially interfered with.

The defendant paid the $5,000 advance payment provided for in the contract and, beginning six months after May 20, 1936, he paid regularly the sum of $500 per month until the 20th day of September, 1938, inclusive, at which time he had paid a total of $16,500. On August 26, 1939, the defendant paid the plaintiffs $180.60.

No timber was cut until the month of July, 1937. At that time, the purchaser began cutting and removing the timber, which he continued to do during the remaining months of the year 1937. In the year 1938, no timber was cut and scaled until the month of July, and operations were again suspended after the month of November in that year. In the year 1939, purchaser cut

and scaled timber in the months of May and June, and a small residue in the months of July, September and October, 1939, after which time no more timber was cut. The following table shows the quantity of timber cut in each month, together with the total price thereof at the contract rates:

| 1937 | | | | | |
|---|---|---|---|---|---|
| Jul | 51,272 | ft. logs | $4.00 | $ | 205.08 |
| Aug | 320,784 | " " | 4.00 | | 1,283.14 |
| Sep | 465,090 | " " | 4.00 | | 1,869.22 |
| Oct | 343,374 | " " | 4.00 | | |
| | 2,789 | " Fallen | 2.00 | | 1,379.08 |
| Nov | 439,816 | " logs | 4.00 | | 1,759.26 |
| Dec | 309,329 | " " | 4.00 | | 1,237.31 |
| 1938 | | | | | |
| Jul | 256,386 | " " | 4.00 | | 1,025.54 |
| Aug | 411,168 | " " | 4.00 | | 1,644.67 |
| Sep | 466,337 | " " | 4.00 | | 1,865.35 |
| Oct | 489,013 | " " | 4.00 | | 1,956.05 |
| Nov | 220,903 | " " | 4.00 | | 883.61 |
| 1939 | | | | | |
| May | 219,230 | " " | 4.00 | | 876.92 |
| June | 168,887 | " " | 4.00 | | 675.55 |
| July | 4,956 | " " | 4.00 | | 19.82 |
| | | | | | 16,680.60 |
| Sep | 8,375 | " " | 4.00 | | 33.50 |
| Oct | 38,890 | " " | 4.00 | | 155.56 |
| | | | | | $16,869.66 |

It is contended by the plaintiffs that the contract, properly construed, requires the purchaser to pay a "royalty" of $500 per month during the entire time, beginning six months after the date of the contract, in which the purchaser was engaged in cutting and removing the timber. The purchaser having paid eight of the monthly "minimum payments" before any timber whatsoever was cut, and having in the first month's cutting removed only $205.08 worth of timber, and having subsequently paid eleven such monthly "minimum payments" in months wherein no timber was cut and scaled, and having, according to plaintiffs' contention, continued to cut and remove timber until the month of October, 1939, plaintiffs claim the right to retain all such "minimum payments" made during the months in which no timber was cut, together with the difference between the actual value of timber cut in those months in which the cuttings did not equal the minimum of the 125,000 feet and the "minimum payment" of $500, and in addition, the right to recover further monthly "minimum payments" up to and including the month of October, 1939.

The defendant contends that the contract is one of purchase and sale, with a reasonable time given by implication within which to remove the timber; that all payments provided for in the contract are payments on the purchase price of the timber; and that in no event can the plaintiffs be permitted to recover from the purchaser any amount in excess of the total purchase price of all merchantable timber on the tract valued at the rates set out in the contract.

The actual operation of the timber contract was carried on by the Ely-Thomas Lumber Company, assignee of the defendant herein. I am satisfied from the evidence that the Ely-Thomas Lumber Company cut and removed all the merchantable timber on the tract of land in controversy. The only substantial evidence to the contrary was that of the witness, W. L. Bateman, who said that he had found about 300,000 feet of timber still standing after operations had ceased, on more than a thousand acres, which timber, he said, ought to have been cut. In view of a number of contradictory statements made by this witness upon cross-examination, together with his demeanor on the witness stand, I am not inclined to credit his statement, which I believe is far outweighed by the testimony of other witnesses. The total value of the timber so cut and removed up to July 31, 1939, at the rates provided in the contract as shown by Exhibit "C" filed with the complaint, which valuations are not contradicted by the plaintiffs, was $16,680.60. It was shown that in September and October, 1939, some small quantities amounting to $189.06 were cut and scaled. It further appears that timber of the total value of $266.28, which had been included in the quantities and amounts shown on Exhibit "C", was actually cut from a boundary owned by the City of Danville instead of by the plaintiffs. It follows that the defendant has paid to the plaintiffs $77.22 in excess of the value of all timber contained in the tract covered by the agreement calculated at the contract prices.

I am unable to agree with the plaintiffs' contention that the contract provides for the payment of a "royalty." Briefly and concisely stated, the contract in question is one for the purchase and sale of timber with a reasonable time given to the purchaser by implication to remove it. The minimum monthly payments of $500 each, beginning six months after the date of the contract, can be considered in no other light than as payments on the purchase price of the timber, and the purchaser can

not be required to pay more than the actual total price.

It is true that the contract required the purchaser to pay for all overages of timber cut above the minimum, after exhausting the original $5,000 advance payment applicable to such overage cuttings, and I am of opinion that the contract, fairly interpreted, required payment for the overage cuttings in any month to be made at the time the minimum payment for that month was made. It is also true that the contract requires the purchaser to cut a minimum of 125,000 feet per month, and that during many months the purchaser cut no timber whatever. But the provisions of the contract already noted giving the sellers the right to hold and sell lumber for the security and satisfaction of unpaid payments were intended to protect the sellers against default in the payment of overages, and those provisions which authorize the sellers to cancel the contract for failure to carry out its terms, and even to remove the purchaser by proceeding against him as a holdover tenant, were intended to protect the sellers against any default, among other possible defaults, in cutting the minimum of 125,000 feet per month. The plaintiffs did not elect to enforce those protective provisions of the contract; they have not been harmed by the failure of the purchaser to cut and remove the minimum of 125,000 feet per month, since the average rate of removal was more than the minimum rate. All that the plaintiffs could have possibly lost by reason of the failure of the defendant to pay the overages promptly when due is the interest thereon up to the time when payment in full was made by the defendant. I am impressed in this connection by the correspondence between the parties during the Fall and Winter of 1938, which correspondence leads me to conclude that the plaintiffs were not at that time demanding or expecting from the defendant any payments in excess of the "regular monthly check of $500" as plaintiffs' agent states in his letter to the defendant, under date of November 4, 1938.

Plaintiffs cite the case of Hall v. W. L. Ritter Lumber Company, 167 Va. 95, 187 S.E. 503, and numerous other Virginia cases arising both in the state and federal courts, as authority for their contention that the contract should be so construed as to give them the right to collect a monthly "royalty." These cases hold that a deed (or contract of sale) for standing timber which contains a fixed period for cutting and removing the same gives the vendee title only to such timber as is removed within the period fixed. I do not regard these authorities as applicable to the instant case, where no period of removal was fixed, and the vendee had by implication a reasonable time in which to remove the timber. See Thomas v. Gates, 4 Cir., 31 F.2d 828.

In the testimony, the defendant attempted to show by numerous witnesses that failure to cut the minimum of 125,000 feet per month was due to causes beyond his control. Nearly all the time of the hearing was taken up with testimony along this line. Under the interpretation which I have given to the contract, such testimony becomes immaterial, and I do not therefore pass on the question of whether or not the defendant, under the circumstances shown, was excused from his contract obligation to cut a minimum of 125,000 feet per month.

My conclusion is that the plaintiffs are not entitled to recover anything from the defendant, and that the defendant is entitled to judgment against the plaintiffs in the amount of $77.22, representing payments made by him in excess of the purchase price of the timber.

Judgment will be entered for the defendant in the amount of $77.22 and costs.